# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LARRY DON SMITH, | § | |
| No. 1192082, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | NO. 3:05-CV-1229-M |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case:  This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

Parties:  Petitioner Larry Don Smith ("Smith" or "Petitioner") is confined at the Michael Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") at Tennessee Colony, Texas.  Respondent is the Director of the TDCJ-CID.

Statement of the Case:  Smith pled not guilty in cause number F01-56388-NQ to one count of aggravated sexual assault of a child.  After a jury trial, Petitioner was found guilty.  The jury sentenced Smith to imprisonment for life.

1

Petitioner appealed his sentence to the Fifth District Court of Appeals and on May 17, 2004, the court affirmed the trial court's judgment.  *Smith v.  State*, No.  05-03-01282-CR (Tex. App.-Dallas May 17, 2004).  Smith did not file a petition for discretionary review.

On February 1, 2005, pursuant to Texas Code of Criminal Procedure article 11.07, Smith filed a habeas application challenging his conviction.  *Ex parte Smith*, Appl.  No.  57,674-02 at 2.  The application was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court without a hearing on May 25, 2005.  *Ex parte Smith*, Appl.  No. 57,674-02 at cover.

Petitioner filed the instant petition on June 13, 2005.[1]  On September 14, 2005, Respondent filed his answer contending that Petitioner waived his ineffective assistance of counsel claims, that Petitioner's insufficiency of the evidence claim is procedurally barred and that Petitioner's remaining claims are without merit.

Findings and Conclusions:  Review of Smith's claims is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") because he filed his § 2254 petition after the effective date of the AEDPA.  The AEDPA, in pertinent part, provides that a federal court cannot grant relief under § 2254 of the act unless the adjudication of a state prisoner's claim in the state court system, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

---

[1]  Under the "mailbox rule," a prisoner's federal habeas corpus petition is deemed filed when he delivers it to prison officials for mailing to the district court.  *Spotville v.  Cain*, 149 F.3d 374, 378 (5th Cir.  1998).  Smith signed his federal habeas petition on June 13, 2005.  It was filed stamped on June 15, 2005.  For the purposes of the recommendation, it is assumed that Smith placed his § 2254 petition in the prison mail system on the date he signed his petition.

2

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C § 2254(d)(1)-(2) (1996). Findings of fact made by a state court are presumed to be correct absent clear and convincing evidence rebutting the presumption. § 2254(e)(1). Where a petitioner challenges a state court's application of federal law under § 2254(d)(1), the petitioner must also show that the state court's decision was not only erroneous, but objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409, 120 S. Ct. 1495, 1521 (2000)); *see also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 421 (2004) ("[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable.").

Where state habeas relief is denied without an opinion, the AEDPA inquiry is not altered. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154, 124 S. Ct. 1156 (2004). In such a situation, a federal court: "(1) assumes that the state court applied the proper 'clearly established Federal law' and then (2) determines whether its decision was contrary to or an objectively unreasonable application of that law." *Id*.

## I. Invalid Waiver of Counsel

### A. Failure of Trial Court to Conduct Proper *Faretta* Inquiry

In his habeas petition, Smith argues that the trial judge erred when he permitted Petitioner to proceed *pro se* at trial. Smith alleges that the judge failed to conduct a proper inquiry to determine if Petitioner knowingly and intelligently waived his right to the assistance of counsel at trial. The Fifth District Court of Appeals addressed this same claim on direct appeal and found that, while the trial judge, in an abundance of caution, should have inquired

3

into the defendant's age, educational background and experience, the record nevertheless

demonstrated that the judge conducted a sufficient inquiry to determine if Petitioner's waiver

was knowing, voluntary and intelligent.

The Sixth Amendment provides a criminal defendant the right to the effective assistance

of counsel at trial as well as the right to "dispense with a lawyer's help." *Faretta v. California*,

422 U.S. 806, 814, 95 S. Ct. 2525, 2530 (1975) (citations omitted). When a defendant elects to

proceed *pro se* at trial, he forgoes "many of the traditional benefits associated with the right to

counsel." *Id*. at 835, 95 S. Ct. at 2541. Therefore, before a judge may permit a defendant to

waive his constitutional right to representation, the judge must find that the waiver is knowing,

voluntary and intelligent. *Id*. (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019,

1023 (1938)).

The question of whether a waiver of counsel was knowing, voluntary and intelligent

depends upon a host of case-specific factors, including "the defendant's education or

sophistication, the complex or easily grasped nature of the charge, and the stage of the

proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 1387 (2004). Where the waiver

occurred at trial, the waiver will not be deemed valid unless the trial court informed the

defendant of the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835, 95

S. Ct. at 2541. Such a warning must be "rigorously conveyed." *Tovar*, 541 U.S. at 89, 124 S.

Ct. at 1388 (quoting *Patterson v. Illinois,* 487 U.S. 285, 298, 108 S. Ct. 2389, 2398 (1988)); *see

also Von Moltke v. Gillies*, 332 U.S. 708, 723-24, 68 S. Ct. 316, 323 (1948) ("The constitutional

right of an accused to be represented by counsel invokes, of itself, the protection of a trial

court...To discharge this duty properly in light of the strong presumption against waiver of the

4

constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand"). In other words, the record must establish that the defendant "kn[ew] what he [wa]s doing and his choice [wa]s made with eyes open." *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242 (1942)). Reviewing courts "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson*, 304 U.S. at 464, 58 S. Ct. at 1023. However, "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Tovar*, 541 U.S. at 92, 124 S. Ct. at 1390.

In this case, Smith first informed the court that he desired to represent himself on the day he was scheduled to go to trial. (Rep's. R. v. 2 at 4.) Prior to invoking his right to proceed *pro se* in open court, Smith never discussed his decision with his appointed counsel, who had been appointed nearly one and one half years earlier. (Rep's. R. v. 2 at 4.) In order to determine whether Petitioner was knowingly, voluntarily and intelligently waiving his right to be represented by counsel at trial, the court engaged in the following colloquy with Smith:

| | |
|---|---|
| The Court: | Mr. Smith, you feel you have given this serious consideration and prepared to go forward today? |
| Smith: | Yes, I have. |
| The Court: | You want Mr. Stephens to sit and assist you in the event you have questions? |
| Smith: | Or I would like to have some time to prepare a defense, because I need to see the evidence the prosecutor's [*sic*] using against me so I can have copies of it so I can use it to prepare a case. I need time. |
| The Court: | I can't do that. You have sprung it the day of trial. |
| Smith: | I asked for a trial and I was moved in time, sir. |
| The Court: | I'm talking about representing yourself. |
| Smith: | Well, I kept thinking we would get to prepare my case and I would get to see the evidence. Not being aware that there was any other |

|  |  |
|---|---|
|  | way, I thought there would be a day he would show me the evidence. |
| The Court: | What evidence is there that–Mr. Stephens, have you discussed this?  I'm sure you talked with the prosecutor as far as what evidence might be presented? |
| Stephens: | Yes, sir. |
|  | [Court asks the prosecutor to detail the State's evidence.  The prosecutor complies.] |
| Smith: | Your honor, for me to prepare a defense, I have to see all of this and know.  I would be willing to do it on my own to prepare it.  I'm not sure he would be willing to do with assisted counsel.  Because I haven't discussed it.  I got to the point where I realize you–I can't get a fair trial this way. |
| The Court: | Are you trying two cases? |
| Wasson: | The state's [*sic*] proceeding on the aggravated sexual assault, Your honor. |
| The Court: | All right.  We'll take a short recess here. |
|  | [Recess is taken.] |
| The Court: | Mr. Smith, let me also make sure that you understand.  I discussed this earlier, but I want to make sure you understand.  If you represent yourself, you're gonna be basically held to the same standard as any other attorney that comes before me. |
| Smith: | Yes, sir, I respect that. |
| The Court: | I explained it to you that you not being trained and experienced in law, there may be situations where you may fail to make an objection because you don't know its proper.  Evidence may be admitted because you don't make proper objections.  A number of matters could happen to your detriment and I want to make sure you understand fully that these issues may occur and you're going into this with your eyes wide open, understanding.  My advice to you is let your attorney handle it.  It's your decision; however, it may–you know, it might not be in your best interest to do that.  It's your decision.  I want you to understand that. |
| Smith: | Your Honor, I respect you for that and I appreciate it very much.  Obviously, there's no easy–no way for this.  But I just... |
| The Court: | Mr. Stephens will be there if you need to ask him questions.  You can ask him.  He will be available to advise you if you need any sort of advice as well.  You want to handle the jury selection process or you want me to handle it? |
| Smith: | One more request.  I need some time. |
| The Court: | That request will be denied. |
| Smith: | I need law-library time.  I need to see the evidence, sir. |
|  | [Court denies Defendant's request.] |

(Rep.'s R.  v.  2 at 4-8.)

A review of the discussion between the trial judge and Petitioner demonstrates that the judge conducted a minimally sufficient examination of Petitioner to determine whether he was knowingly and intelligently waiving his right to counsel.  *See United States v.  Fulton*, 131 Fed. Appx.  441, 442-43 (5th Cir. 2005) (waiver of counsel deemed valid where court warned defendant that the charge was "complex," that it was in his best interest to continue with appointed counsel, and that he faced a "daunting task" and a "capable prosecutor"); *Dunn v. Johnson*, 162 F.3d 302, 307 (5th Cir.  1998) (waiver of counsel deemed valid where court warned defendant that trial advocacy was a special skill, that self-representation might prejudice his case, that he would be held to the same standards as a trained attorney and questioned the defendant about his understanding of the impending litigation); *but see United States v.  Jones*, 421 F.3d 359, 362-365 (5th Cir.  2005) (waiver deemed invalid where judge asked defendant if he knew that representing himself was "dangerous" but did not give further warnings regarding the pitfalls of self-representation); *United States v.  Davis*, 269 F.3d 514, 517 n.1, 520 (5th Cir. 2001) (waiver deemed invalid where judge informed defendant that by proceeding *pro se* he might unintentionally implicate himself at trial, but otherwise relied on the warnings about self-representation given to defendant by counsel).  Though the judge did not inquire into Petitioner's background, failed to explain to Petitioner the maximum penalty he faced upon conviction, and did not explain any potential defenses available to him, he repeatedly warned Petitioner of the dangers of proceeding *pro se* and recommended that Petitioner change his mind and allow appointed counsel to represent him.  *See Tovar*, 541 U.S. at 79, 124 S.  Ct.  at 1382 ("even if the defendant lacked a full and complete appreciation of all of the consequences flowing from his

7

waiver, the State may nevertheless prevail if it shows that the information provided to the defendant satisfied the constitutional minimum"). Specifically, he informed Petitioner that he would be held to the same standards as a licensed attorney and that he might prejudice his case by failing to make objections to various items of evidence. (Rep.'s R. v. 2 at 7.) The judge also stated that "my advice is to let your attorney handle it." (Rep.'s R. v. 2 at 7.) The defendant repeatedly acknowledged that he understood the judge's cautionary advice, but nevertheless indicated that he wished to proceed *pro se*. Insofar as the trial judge failed to inquire into Petitioner's background, this court agrees with the Fifth District Court of Appeals that a cautious judge should have conducted such an inquiry. However, the failure to question Petitioner regarding his educational background and life experiences does not make his waiver invalid *per se*. A review of the waiver hearing as a whole demonstrates that the trial judge conducted a sufficient inquiry into the nature of Petitioner's waiver of counsel. Therefore, Petitioner has not shown that the state court's determination was objectively unreasonable. *See* § 2254(d)(1); *Yarborough*, 540 U.S. at 5, 124 S. Ct. at 4.

**B.     Ineffective Assistance of Counsel**

Petitioner argues that he was constructively denied counsel because he received no meaningful assistance from his appointed counsel prior to trial, and, in the alternative, that counsel was ineffective during the pretrial stage. Though Petitioner classifies his argument as an ineffective assistance of counsel claim, it is more properly categorized as a challenge to the voluntariness of his waiver of counsel. For instance, in "Ground of Error No. 9," Petitioner catalogues his counsel's alleged errors and then states, "Defendant had to try to help himself due to Counsel's lack of preparation." In essence, Smith asserts that he was forced to make the

"constitutionally repugnant choice" between representation by unprepared appointed counsel and self-representation. *See Dunn*, 162 F.3d at 307. However, "a defendant's refusal without good cause to proceed with able appointed counsel constitutes a voluntary waiver of that right." *Id.* (citation omitted). Petitioner has presented no evidence to show that his appointed counsel's pretrial performance was inadequate. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065 (1984) (holding that competence is determined under prevailing professional norms). In fact, the record contains evidence that Smith's counsel prepared for trial and filed at least one pre-trial motion. (Rep.'s R. v. 2 at 5); (Clerk's R. v. 1 at 11) (State's Response to Def.'s Motion to List Witnesses). Therefore, Smith has failed to demonstrate that his waiver of counsel was involuntary and has failed to meet the requirements of § 2254(d)(1).

## II.     Denial of the Right to Confront Witnesses

Smith's next ground for relief alleges that the trial court violated his Sixth Amendment right to be confronted by the witnesses against him by limiting cross-examination of the victim regarding her co-habitation with a boyfriend or boyfriends.

The Confrontation Clause of the Sixth Amendment guarantees the right of the accused in a criminal proceeding to be confronted with the witnesses against him. *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986)). A necessary component of confrontation is the right to test the reliability of the State's witnesses through cross-examination. *Id.* (citing *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 1110 (1974)). However, a trial judge retains "wide latitude" to impose reasonable limits on cross-examination, especially based on concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only

marginally relevant." *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435.  As long as a defendant

is permitted to conduct an "effective" cross-examination, his Sixth Amendment rights have been

protected, because the Constitution does not require that a defendant be granted the right to

cross-examine a witness in "whatever way, and to whatever extent, the defense might wish."

*Brown*, 419 F.3d at 375 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 S. Ct. 989, 999

(1987) (citation omitted)).

      A review of the transcript of Petitioner's cross-examination and recross-examination of

the victim demonstrates that the trial judge did not impermissibly limit Petitioner's questioning.

Petitioner was permitted to test the reliability of the victim by questioning her regarding her

relationship with other males, including whether she ever snuck out of her house to meet boys,

whether she drank and engaged in other "things" with some boys in Euless and Bedford, and

whether she planned to move in with a male and a female friend.  (Rep.'s R.  v.  3 at 53-71, 73-

76.)  The court, after objections as to relevance and assuming facts not in evidence, did not

permit Smith to question the victim regarding an alleged incident where Petitioner came home to

find the victim and a boy unsupervised together in the home.  (Rep.'s R. v.  3 at 66.)  This

decision by the court to impose a limitation on Petitioner's questioning was reasonable because

Petitioner had already been permitted to test the credibility of the victim regarding her

relationships with boys, and therefore, the court was well within its discretion to limit further

inquiry regarding this topic.  Thus, Petitioner's claim is without merit.

### III.    Insufficiency of the Evidence

Smith next alleges that there was insufficient evidence to convict him.[2]  Specifically, Petitioner argues that the state failed to prove that the victim was under the age of fourteen at the time of the offense and failed to prove that Petitioner intended to touch the victim.  Respondent argues that Petitioner's claim is procedurally barred.

Under Texas law, a challenge to the sufficiency of the evidence used to sustain a felony conviction is not cognizable on an application for state habeas relief; instead, such a claim must be raised on direct appeal.  *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *see also* Tex. Code Crim.  Proc.  Ann. art.  11.07, § 4; *Kittelson v.  Dretke*, 426 F.3d 306, 317 n.26 (5th Cir.  2005).  Smith raised his claim on direct appeal, and the Fifth District Court of Appeals denied his claim on the merits, citing both federal and state law.   *Smith v.  State*, No.  05-03-01282-CR (Tex.  App.-Dallas May 17, 2004).  Smith did not file a petition for discretionary review.  When Smith reasserted his insufficiency of the evidence claim in his state habeas application, the trial court merely stated that "there are no controverted, previously unresolved facts material to the legality of the Applicant's confinement which require an evidentiary hearing." *Ex parte Smith*, Appl.  No.  57,674-02 at 68.   The Texas Court of Criminal Appeals denied Smith's habeas application without written order on the findings of the trial court without a hearing.  *Ex parte Smith*, Appl.  No.  57,674-02 at cover.

---

[2]  Petitioner does not indicate whether he is alleging that he was convicted based on legally insufficient evidence, factually insufficient evidence, or both.  This court will interpret his claim as posing a challenge to the legal sufficiency of the evidence, because an argument that the evidence was factually insufficient is not a cognizable federal claim.  *See Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002) (noting that factual insufficiency is a creation of state law); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991) ("federal habeas corpus relief does not lie for errors of state law").

Generally, federal review of a habeas claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553-54 (1991). Respondent, citing *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004), argues that the Court of Criminal Appeals necessarily applied a state procedural bar when it denied Smith's claim without written order.  In *Grigsby*, the Texas Court of Criminal Appeals stated that, "where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable." However, despite the Court of Criminal Appeals' statement regarding the presumption that should be made when it denies without written order a petition that raises an insufficiency of the evidence claim, and without any guidance from the United States Court of Appeals for the Fifth Circuit regarding the import of *Grigsby*, this court is not inclined to presume that the Court of Criminal Appeals applied a procedural bar to Smith's insufficiency of the evidence claim.  The United States Court of Appeals for the Fifth Circuit has repeatedly held that "the mere existence of a procedural default does not deprive federal courts of jurisdiction." *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999) (citing *Shaw v. Collins*, 5 F.3d 128, 131 (5th Cir. 1993)).  Instead, "to prohibit our collateral review the state court must have expressly relied on the procedural bar as the basis for disposing of the case."  *Bledsue*, 188 F.3d at 256; *see also Coleman*, 501 U.S. at 733, 111 S. Ct.  at 2556.  In this case, there is nothing within the Court of Criminal Appeals' opinion or in the nature of the proceedings below to suggest that the court applied a procedural bar.  *See, e.g.,  Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (applying a procedural bar where,

on collateral review, the trial court refused to reach the sufficiency of the evidence claim explicitly based on a state procedural rule, and the Court of Criminal Appeals denied relief "on the findings of the trial court").  In fact, the last reasoned state judgment addressing Petitioner's insufficiency of the evidence claim rejected it on the merits while expressly citing both federal and state law.  *Smith v.  State*, No.  05-03-01282-CR (Tex.  App.-Dallas May 17, 2004); *see also Ylst v.  Nunnemaker*, 501 U.S. 797, 803, 111 S.  Ct.  2590, 2594 (1991) ("where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"); *Bledsue*, 188 F.3d at 257 (citing *Ylst* as a basis for "look[ing] through" the Texas Court of Criminal Appeals' unreasoned decision to the reasoned decision of the intermediate appellate court on direct appeal to determine if petitioner's insufficiency of the evidence claim was decided on the merits).  Therefore, in accordance with *Ylst* and *Bledsue*, this court will presume that the Court of Criminal Appeals' later unexplained order also denied the claim on the merits.  Therefore, this issue is before the court on its merits.

In reviewing the sufficiency of the evidence, a court refers to the substantive elements of the criminal offense as defined by state law.  *Weeks v.  Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).  During this review, the court examines all of the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  This standard takes into account a jury's duty to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id*.

13

Petitioner was charged with aggravated sexual assault of a child.  Therefore, the state was required to prove that: (1) in Dallas County, (2) Smith, (3) intentionally or knowingly, (4) caused the penetration of the mouth of the victim by the sexual organ of Smith and, (5) the victim was a child younger than 14 years of age.  Tex. Penal Code Ann. § 22.021(a)(1)(B), (a)(2)(B) (Vernon 1999).  At trial, the State introduced evidence to support the first element through the testimony of the victim that Petitioner sexually assaulted her at several different locations, including at a house in Richardson, Texas, which is located in Dallas County.  (Rep.'s R.  v. 3 at 40-42.)  The victim graphically described how Petitioner twice put his penis in her mouth, moved it up and down in her mouth, and ejaculated in her mouth.  (Rep.'s R.  v. 3 at 40-42).  This testimony, if deemed credible by the jury, was sufficient to satisfy the second, third and fourth elements of the offense.  *See Matter of H.R.A.*, 790 S.W.2d 102, 105-06 (Tex. App.-Beaumont 1990) (finding that testimony from child victim that defendant placed victim's penis in his mouth and moved it up and down was sufficient to support jury's finding regarding the "intentionally or knowingly" element of aggravated sexual assault of a child).  Finally, while the State did not introduce the victim's birth certificate to prove that she was under fourteen years of age when the offense took place, the State introduced testimonial evidence to support this element.  The indictment alleged that the aggravated sexual assault of a child younger than 14 years occurred on or about October 1, 1999.  *See*, *e.g.*, *Ex parte Smith*, Appl.  No.  57,674-02 at 69.  The victim testified that she currently[3] was 15 years old and that her birthday was September 16 (Rep.'s R.  v.  3 at 28); Joanne Crooks, the victim's grandmother, testified that the victim was 13 years old in 2001 (Rep.'s R.  v.  2 at 118); and Claudia King, a forensic interviewer for Child Protective Services, testified that the victim was 13 years old when she interviewed her on August 21, 2001 (Rep.  R.

---

[3]  The trial was held August 12-15, 2003.

v.  3 at 152-53).  Though Petitioner attempted to attack the credibility of the witnesses through cross-examination, a review of the entire record demonstrates that a rational jury could have accepted the testimony of all of the witnesses for the State and found that Petitioner committed the offense.  Therefore, Petitioner's claim regarding insufficiency of the evidence to convict is without merit.

## IV.  Improper Introduction of Dr.  Lewis' Testimony

Petitioner argues that the trial court improperly admitted the testimony of Dr.  Franklin Lewis, a clinical psychologist and registered sex-offender treatment provider who treated Smith, because Dr.  Lewis did not give Smith *Miranda* warnings before speaking to him.  Dr.  Lewis testified during the guilt phase of Petitioner's trial.  He indicated that he saw Smith for a seven month period in 2002 and that Smith voluntarily sought him out for counseling.  (Rep.'s R.  v.  4 at 23-24.)  He testified that Petitioner admitted engaging in "certain inappropriate behaviors" of a sexual nature with the victim and admitted having a "sexual problem."  (Rep.'s R.  v.  4 at 28-29.)

The United States Supreme Court has held that, in limited instances, a psychologist's testimony regarding conversations with a defendant may not be admitted against the defendant at trial where the doctor did not give the defendant *Miranda* warnings.  *See Estelle v. Smith*, 451 U.S. 454, 468, 101 S. Ct. 1866, 1876 (1981) (prohibiting admission of psychologist's statements where the examination of defendant was court-ordered, and defendant had not indicated that he would present a mental defense at trial); *see also Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).  In *Smith v.  Estelle*, *supra*, the Court held that the psychiatrist's testimony on the issue of "future dangerousness" in the punishment phase of a capital murder

15

case which was based upon the doctor's observations pursuant to a court-ordered examination to determine the defendant's competency to stand trial violated the accused's right against self-incrimination.  The facts in Petitioner's case are readily distinguishable.  There was no court order which compelled him to submit to an examination.  Further, he voluntarily sought out treatment from Dr.  Lewis.  (Rep.'s R.  v.  4 at 24.)  In fact, Smith admitted that he initiated contact with Dr. Lewis because an inmate told him that "if I would see a psychiatrist and convince him I was guilty and had remorse, they would offer me probation and this whole ugly thing would go away."  (Rep.'s R.  v.  4 at 35, 43-46.)  Thus, Smith's conversations with Dr. Lewis did not occur under unduly coercive circumstances such as those detailed in either *Miranda* or *Smith*.  Consequently, Petitioner's argument in this ground must fail because Dr. Lewis' testimony was properly admitted.

## V.      Improper Suppression of Evidence

In his next ground of error, Smith alleges that he was not permitted to view, either before trial or during the trial, various items submitted by the State into evidence, including: letters the defendant wrote, the "tape videos," Dr.  Lewis' report, witness statements, and a letter written by the victim to her mother.

While there is no formal discovery process in a criminal trial, after a motion by the defense, the defense has the right to be provided with two types of evidence: (1) evidence in the possession of the State that is favorable to the defense, *see Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963), and (2) copies of any statements made by a witness that relate to the subject matter of the witness' testimony, *see* Tex.  R.  Evid.  615(a); *see also Jenkins v. State*, 912 S.W.2d 793, 802 (Tex. Crim. App. 1993) (noting that Rule 614, which later became Rule

16

615(a), is substantially similar to the federal Jencks Act, 18 U.S.C. § 3500).  However, only

Petitioner's *Brady* argument is cognizable on federal habeas review.  *See Calley v. Callaway*,

519 F.2d 184, 225-26 (5th Cir. 1975) (citing *United States v. Augenblick*, 393 U.S. 348, 356, 89

S. Ct. 528, 533 (1969)) (holding that failure to produce *Jencks* material is not an error of

constitutional proportions).

To establish a *Brady* violation a defendant must prove that: "(1) the prosecution

suppressed evidence, (2) the suppressed evidence was favorable to the defense and (3) the

suppressed evidence was material to the defense."  *Brady*, 373 U.S. at 87, 83 S.  Ct.  at 1197.

Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to

the defense, the result of the proceeding would have been different."  *Strickler v. Greene*, 527

U.S. 263, 280, 119 S. Ct. 1936, 1948 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682,

105 S. Ct. 3375, 3383 (1985)).  Smith does not address any of the elements of a *Brady* violation

in his petition and the record does not indicate that the State suppressed any evidence favorable

to Petitioner.  Moreover, the record indicates that the trial judge was cognizant that Smith should

be afforded an opportunity to view any items of evidence before they were admitted.  (Rep.'s R.

v.  3 at 158.)  Therefore, Petitioner has failed to establish a constitutional violation and his claim

is without merit.

## VI.      Failure of Trial Court to Hold a Competency Hearing

Smith argues that the trial court violated its duty to hold a competency hearing after Dr.

Lewis testified that Petitioner was taking various "psychotropic" medications during his

treatment by Dr.  Lewis.  In Texas, a defendant is incompetent to stand trial if the defendant does

not have: (1) sufficient present ability to consult with his lawyer with a reasonable degree of

17

rational understanding; or (2) a rational as well as factual understanding of the proceedings against him.  *See McDaniel v. State*, 98 S.W.3d 704, 709-10 (Tex. Crim. App. 2003) (citing Tex. Code Crim. Proc.  Ann.  art.  46.02, § 1A(a)); *see also Pate v. Robinson*, 383 U.S. 375, 385, 86 S. Ct. 836, 842 (1966).  If evidence is introduced at trial that raises a question as to a defendant's competency to stand trial, the judge must hold a competency hearing.  *McDaniel*, 98 S.W.3d. at 710.  However, where a federal habeas petitioner seeks relief based on alleged incompetency at trial, he must show "that the facts are sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt" as to his mental competency at the time of trial.  *Dunn*, 162 F.3d at 306 (citations omitted).

On cross-examination, Dr.  Lewis testified that Petitioner was on psychotropic medications that could make him feel "drugged out." (Rep.'s R.  v.  4 at 30.)  However, this testimony regarding the side effects Petitioner may have experienced from various medications was of no import regarding his competency to stand trial in August of 2003, given that Dr. Lewis last treated Smith in September of 2002, almost one year before the trial commenced.  (Rep.'s R. v.  4 at 23.)  Moreover, the transcript from the trial indicates that Petitioner had the ability to conduct his own defense, including to cross-examine witnesses, testify in his own defense, voice objections, and make an opening and closing statement.  Because Petitioner has not identified any *relevant* evidence that would have served to inform the trial judge of whether Petitioner was competent to stand trial, his claim in this ground is without merit.[4]

## VII.    Failure to Prove Unadjudicated Extraneous Offenses Beyond a Reasonable Doubt

---

[4]  It is perhaps noteworthy that Petitioner's incompetency claim raised in a separate article 11.07 application was also found to be lacking in merit.  *See Ex parte Smith*, Appl.  No. 57,674-01 at cover, 18, 35-36.

Petitioner argues that his due process rights were violated during the punishment phase of the trial because the state failed to prove beyond a reasonable doubt that he committed various unadjudicated extraneous offenses.  Under Texas law, the admission of an unadjudicated extraneous offense is permitted during the State's case-in-chief in the punishment phase of a trial.  *See Jaubert v.  State*, 74 S.W.3d 1, 3 (Tex. Crim. App. 2002) (examining the legislative history of Tex. Code. Crim. Proc. Ann. art. 37.07, § 3(g)); *see also Washington v.  State*, 943 S.W.2d 501, 503-04 (Tex.  App.-Fort Worth 1997) (noting that § 3(g) was added in 1993 to permit the state to offer evidence of unadjudicated extraneous bad acts at punishment proceedings).  Moreover, the United States Court of Appeals for the Fifth Circuit has held that "there is no constitutional prohibition on the introduction at a trial's punishment phase of evidence showing that the defendant has engaged in extraneous, unadjudicated, criminal conduct."  *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).  Although the Texas Court of Criminal Appeals has interpreted article 37.07, § 3(a)(1) to require proof of the commission of an extraneous offense beyond a reasonable doubt, *see Mitchell v.  State*, 931 S.W.2d 950, 954 (Tex. Crim.  App.  1996), this is a matter of state law only.  The court, in *Brown*, specifically held that the Constitution "does not require that unadjudicated extraneous offenses be proved beyond a reasonable doubt for evidence of those offenses to be admitted at trial."  *Id.*  at 376-77. Consequently, Petitioner's claim in this ground fails to present a basis for relief under § 2254.

## VIII.   Ineffective Assistance of Counsel on Appeal

Petitioner also argues that he received ineffective assistance from his appointed counsel on appeal.  Petitioner's argument in this ground is difficult to ascertain but it appears that he

19

believes that his appellate counsel failed to ensure that the record filed with the appellate court contained a copy of a videotape shown to the jury.

A criminal defendant has a constitutional right to receive effective assistance of counsel on direct appeal. *See*, *e.g.*, *United States v.  Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  Where a federal habeas corpus petitioner alleges that his appellate counsel was ineffective, the standards set out in *Strickland* govern the court's examination of appellate counsel's conduct. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.  Ct.  746, 764 (2000).  Under *Strickland,* there is a strong presumption that an attorney's conduct falls within the broad range of reasonable professional assistance required under the Sixth Amendment.  466 U.S. at 690, 104 S. Ct.  at 2066.  To overcome this presumption a habeas petitioner must establish that: (1) the attorney's conduct was constitutionally deficient (causation) and (2) but for such unprofessional errors, the result probably would have been different (prejudice). *Id*. at 687, 694, 104 S. Ct. at 2064, 2068. Failure to prove either prong of the two-part test  forecloses relief. *Id.* at 697, 104 S. Ct. at 2069.

Under the Texas Rules of Appellate Procedure, trial and appellate courts are jointly responsible for ensuring that the appellate record is timely filed and that it contains copies of specific items that are mandated by statute.  Tex. R. App. P.  35.5.  However, if an appellant desires that additional items be included in the appellate record, such as the reporter's record, he has an affirmative duty to make a specific request that such items be included. Tex. R. App. P. 35.5.

Petitioner has not presented any evidence to show that any videotape shown to the jury was not made part of the appellate record.  Moreover, Petitioner has presented no argument

regarding any prejudice he suffered from the alleged exclusion of such videos from the record on appeal and his claim is without merit.

## IX.    Failure to Grant Defendant's Motion for a Continuance

Finally, Smith argues that the trial court abused its discretion when it denied his request for a continuance so that he could adequately prepare to represent himself at trial.  A trial judge has broad discretion in ruling on a motion for a continuance and the denial of the motion is reviewed for an abuse of discretion.  *United States v. Scott*, 48 F.3d 1389, 1393 (5th Cir. 1995). Even where a trial court has abused its discretion in refusing to grant a continuance, relief is not warranted unless the defendant can show that he "suffered serious prejudice."  *Id.*  (citation omitted).  While each situation is reviewed on a case-by-case basis, the following factors have been deemed important to the determination of whether a continuance was properly denied: "(1) the amount of preparation time available, (2) whether the defendant took advantage of the time available, (3) the likelihood of prejudice from a denial, (4) the availability of discovery from the prosecution, and (5) the complexity of the case."  *Id.*

Smith received appointed counsel on February 20, 2002.  Between that date and August 12, 2003, when the criminal trial began, the trial date was reset at least six times.  *See Ex parte Smith*, Appl.  No. 57,674-02 at 70.  At no time prior did Petitioner give any indication that he wished to proceed *pro se*.  Although his attorney was relieved from formally representing Smith, Stephens remained in attendance as standby counsel to assist him.  (Rep.'s R.  v.  2 at 7-8.) While, arguably, Petitioner had no time to prepare for trial, he had standby counsel and the charge was not complex.  *See United States v.  Hurtado*, 47 F.3d 577, 584 (2nd Cir.  1995) (finding no error in the denial of a continuance where defendant, who elected to proceed *pro se*

on the day of trial, arguably had access to discovery turned over to his counsel "well in advance of trial); *United States v. Egwaoje*, 335 F.3d 579, 588 (7th Cir. 2003) (finding no abuse of discretion in the denial of a continuance to *pro se* defendant where, among other factors, defendant "chose not to avail himself of the opportunity to access his discovery materials through his attorneys" and the charge was relatively simple). Moreover, Petitioner has failed to explain how he was prejudiced by the denial of his motion for a continuance. He does not allege that, had he been given additional time to prepare for trial, he would have called additional witness, presented additional evidence, or conducted additional legal research. *See United States v. Hoenig*, 79 Fed. Appx. 8, 9 (5th Cir. 2003). Therefore, Petitioner has failed to state a claim for relief under § 2254.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the district court deny and dismiss the

petition.

Signed this 14th day of February, 2006.

_____
Wm. F. Sanderson Jr.
United States Magistrate Judge

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.